# EXHIBIT A



**C O R P O R A T I O N   S E R V I C E   C O M P A N Y**

# Notice of Service of Process

null / ALL
Transmittal Number: 15465608
Date Processed: 08/03/2016

| | |
|---|---|
| Primary Contact: | Robert Scott<br>Harry Winston, Inc.<br>718 Fifth Avenue<br>New York, NY 10019 |
| Copy of transmittal only provided to: | Matt Cohen<br>Laura Chan |

| | |
|---|---|
| Entity: | Harry Winston Inc.<br>Entity ID Number 0513539 |
| Entity Served: | Harry Winston, Inc. |
| Title of Action: | Optikal Noize, Inc. vs. AAB Productions, Inc. |
| Document(s) Type: | Summons/Complaint |
| Nature of Action: | Contract |
| Court/Agency: | Los Angeles County Superior Court, California |
| Case/Reference No: | BC629095 |
| Jurisdiction Served: | California |
| Date Served on CSC: | 08/02/2016 |
| Answer or Appearance Due: | 30 Days |
| Originally Served On: | CSC |
| How Served: | Personal Service |
| Sender Information: | Zein E. Obagi, Jr.<br>424-284-2401 |

Information contained on this transmittal form is for record keeping, notification and forwarding the attached document(s). It does not constitute a legal opinion. The recipient is responsible for interpreting the documents and taking appropriate action.

**To avoid potential delay, please do not send your response to CSC**
*CSC is SAS70 Type II certified for its Litigation Management System.*
2711 Centerville Road   Wilmington, DE 19808   (888) 690-2882   |   sop@cscinfo.com

SUM-100

# SUMMONS
## (CITACION JUDICIAL)

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*

AAB PRODUCTIONS, INC., a New York corporation; (additional
parties form attached)

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*

OPTIKAL NOIZE, INC., a California corporation

*FOR COURT USE ONLY*
*(SOLO PARA USO DE LA CORTE)*

CONFORMED COPY
ORIGINAL FILED
Superior Court of California
County of Los Angeles

AUG 0 1 2016

Sherri R. Carter, Executive Officer/Clerk
By: Judi Lara, Deputy

---

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

| The name and address of the court is:<br>*(El nombre y dirección de la corte es):* Superior Court of California,<br>County of Los Angeles, 111 N. Hill St. Los Angeles CA 90012 | CASE NUMBER:<br>*(Número del Caso):*<br>BC 6 2 9 0 9 5 |
|---|---|

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Zein E. Obagi, Jr, Obagi Law Group PC 433 N Camden Dr Ste 400 Beverly Hills CA 90210, (424) 284-2401

| DATE: AUG 0 1 2016<br>*(Fecha)* | SHERRI R. CARTER Clerk, by<br>*(Secretario)* Judi Lara | , Deputy<br>*(Adjunto)* |
|---|---|---|

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served

[SEAL]

1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify)*:

3. ☑ on behalf of *(specify)*: Harry Winston, Inc., A New York Corporation

under: ☑ CCP 416.10 (corporation)       ☐ CCP 416.60 (minor)
       ☐ CCP 416.20 (defunct corporation)  ☐ CCP 416.70 (conservatee)
       ☐ CCP 416.40 (association or partnership)  ☐ CCP 416.90 (authorized person)
       ☐ other *(specify)*:
4. ☐ by personal delivery on *(date)*:

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465
*www.courtinfo.ca.gov*

SUM-200(A)

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| Optikal Noize v. AAB Productions, et al. | |

### INSTRUCTIONS FOR USE

→ This form may be used as an attachment to any summons if space does not permit the listing of all parties on the summons.
→ If this attachment is used, insert the following statement in the plaintiff or defendant box on the summons: "Additional Parties Attachment form is attached."

List additional parties *(Check only one box. Use a separate page for each type of party.)*:

☐ Plaintiff      ☑ Defendant      ☐ Cross-Complainant      ☐ Cross-Defendant

THE FOUNDATION FOR AIDS RESEARCH, a New York not-for-profit corporation, dba amfAR; HARRY WINSTON, INC., a New York corporation; and DOES 1-100, INCLUSIVE

Page ___1___ of ___1___

Page 1 of 1

| | |
|---|---|
| Form Adopted for Mandatory Use<br>Judicial Council of California<br>SUM-200(A) [Rev. January 1, 2007] | **ADDITIONAL PARTIES ATTACHMENT**<br>**Attachment to Summons** |

BC 6 2 9 0 9

SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
NOTICE OF CASE ASSIGNMENT - UNLIMITED CIVIL CASE (NON-CLASS ACTION)

Case Number _____

### THIS FORM IS TO BE SERVED WITH THE SUMMONS AND COMPLAINT

Your case is assigned for all purposes to the judge indicated below. There is more information on the reverse side of this form.

| ASSIGNED JUDGE | DEPT | ROOM | | ASSIGNED JUDGE | DEPT | ROOM | |
|---|---|---|---|---|---|---|---|
| Hon. Kevin C. Brazile | 1 | 534 | | Hon. Elizabeth Allen White | 48 | 506 | |
| Hon. Barbara A. Meiers | 12 | 636 | | Hon. Deirdre Hill | 49 | 509 | |
| Hon. Terry A. Green | 14 | 300 | | Hon. Teresa A. Beaudet | 50 | 508 | |
| Hon. Richard Fruin | 15 | 307 | | Hon. Michael J. Raphael | 51 | 511 | |
| Hon. Rita Miller | 16 | 306 | | Hon. Susan Bryant-Deason | 52 | 510 | |
| Hon. Richard E. Rico | 17 | 309 | | Hon. Howard L. Halm | 53 | 513 | |
| Hon. Stephanie Bowick | 19 | 311 | | Hon. Ernest M. Hiroshige | 54 | 512 | |
| Hon. Dalila Corral Lyons | 20 | 310 | | Hon. Malcolm H. Mackey | 55 | 515 | |
| Hon. Robert L. Hess | 24 | 314 | | Hon. Michael Johnson | 56 | 514 | |
| Hon. Yvette M. Palazuelos | 28 | 318 | | Hon. John P. Doyle | 58 | 516 | |
| Hon. Barbara Scheper | 30 | 400 | | Hon. Gregory Keosian | 61 | 732 | |
| Hon. Samantha Jessner | 31 | 407 | | Hon. Michael L. Stern | 62 | 600 | |
| Hon. Daniel S. Murphy | 32 | 406 | | Hon. Mark Mooney | 68 | 617 | |
| Hon. Michael P. Linfield | 34 | 408 | | Hon. William F. Fahey | 69 | 621 | |
| Hon. Gregory Alarcon | 36 | 410 | | Hon. Suzanne G. Bruguera | 71 | 729 | |
| Hon. Marc Marmaro | 37 | 413 | | Hon. Ruth Ann Kwan | 72 | 731 | |
| Hon. Maureen Duffy-Lewis | 38 | 412 | | Hon. Rafael Ongkeko | 73 | 733 | |
| Hon. Elizabeth Feffer | 39 | 415 | | Hon. Teresa Sanchez-Gordon | 74 | 735 | |
| Hon. David Sotelo | 40 | 414 | | Hon. Gail Ruderman Feuer | 78 | 730 | |
| Hon. Holly E. Kendig | 42 | 416 | | | | | |
| Hon. Mel Red Recana | 45 | 529 | | Hon. Steven J. Kleifield | 324 | CCW | |
| Hon. Frederick C. Shaller | 46 | 500 | | *Provisionally Complex Non-class Action Cases Assignment is Pending Complex Determination | 324 | CCW | |
| Hon. Debre K. Weintraub | 47 | 507 | | | | | |

### *Complex

All non-class action cases designated as provisionally complex are forwarded to the Supervising Judge of the Complex Litigation Program located in the Central Civil West Courthouse (600 S. Commonwealth Ave., Los Angeles 90005), for complex/non-complex determination pursuant to Local Rule 3.3(k). This procedure is for the purpose of assessing whether or not the case is complex within the meaning of California Rules of Court, rule 3.400. Depending on the outcome of that assessment, the case may be reassigned to one of the Judges of the Complex Litigation Program or reassigned randomly to a court in the Central District.

Given to the Plaintiff/Cross-Complainant/Attorney of Record on AUG 0 1 2016 SHERRI R. CARTER, Executive Officer/Clerk

By _____, Deputy Clerk

# INSTRUCTIONS FOR HANDLING UNLIMITED CIVIL CASES

The following critical provisions of the Chapter Three Rules, as applicable in the Central District, are summarized for your assistance.

## APPLICATION

The Chapter Three Rules were effective January 1, 1994. They apply to all general civil cases.

## PRIORITY OVER OTHER RULES

The Chapter Three Rules shall have priority over all other Local Rules to the extent the others are inconsistent.

## CHALLENGE TO ASSIGNED JUDGE

A challenge under Code of Civil Procedure section 170.6 must be made within 15 days after notice of assignment for all purposes to a judge, or if a party has not yet appeared, within 15 days of the first appearance.

## TIME STANDARDS

Cases assigned to the Individual Calendaring Court will be subject to processing under the following time standards:

**COMPLAINTS:** All complaints shall be served within 60 days of filing and proof of service shall be filed within 90 days of filing.

**CROSS-COMPLAINTS:** Without leave of court first being obtained, no cross-complaint may be filed by any party after their answer is filed. Cross-complaints shall be served within 30 days of the filing date and a proof of service filed within 60 days of the filing date.

A Status Conference will be scheduled by the assigned Independent Calendar Judge no later than 270 days after the filing of the complaint. Counsel must be fully prepared to discuss the following issues: alternative dispute resolution, bifurcation, settlement, trial date, and expert witnesses.

## FINAL STATUS CONFERENCE

The Court will require the parties at a status conference not more than 10 days before the trial to have timely filed and served all motions in limine, bifurcation motions, statements of major evidentiary issues, dispositive motions, requested jury instructions, and special jury instructions and special jury verdicts. These matters may be heard and resolved at this conference. At least 5 days before this conference, counsel must also have exchanged lists of exhibits and witnesses and have submitted to the court a brief statement of the case to be read to the jury panel as required by Chapter Eight of the Los Angeles Superior Court Rules.

## SANCTIONS

The court will impose appropriate sanctions for the failure or refusal to comply with Chapter Three Rules, orders made by the Court, and time standards or deadlines established by the Court or by the Chapter Three Rules. Such sanctions may be on a party or if appropriate on counsel for the party.

This is not a complete delineation of the Chapter Three Rules, and adherence only to the above provisions is therefore not a guarantee against the imposition of sanctions under Trial Court Delay Reduction. Careful reading and compliance with the actual Chapter Rules is absolutely imperative.

# VOLUNTARY EFFICIENT LITIGATION STIPULATIONS



**Superior Court of California
County of Los Angeles**



**Los Angeles County
Bar Association
Litigation Section**

**Los Angeles County
Bar Association Labor and
Employment Law Section**



**Consumer Attorneys
Association of Los Angeles**



**Southern California
Defense Counsel**

**abtl**

**Association of
Business Trial Lawyers**



**California Employment
Lawyers Association**

The Early Organizational Meeting Stipulation, Discovery Resolution Stipulation, and Motions in Limine Stipulation are voluntary stipulations entered into by the parties. The parties may enter into one, two, or all three of the stipulations; however, they may not alter the stipulations as written, because the Court wants to ensure uniformity of application. These stipulations are meant to encourage cooperation between the parties and to assist in resolving issues in a manner that promotes economic case resolution and judicial efficiency.

*The following organizations endorse the goal of promoting efficiency in litigation and ask that counsel consider using these stipulations as a voluntary way to promote communications and procedures among counsel and with the court to fairly resolve issues in their cases.*

◆**Los Angeles County Bar Association Litigation Section**◆

◆ **Los Angeles County Bar Association
Labor and Employment Law Section**◆

◆**Consumer Attorneys Association of Los Angeles**◆

◆**Southern California Defense Counsel**◆

◆**Association of Business Trial Lawyers**◆

◆**California Employment Lawyers Association**◆

| NAME AND ADDRESS OF ATTORNEY OR PARTY WITHOUT ATTORNEY: | STATE BAR NUMBER | Reserved for Clerk's File Stamp |
|---|---|---|
| TELEPHONE NO.:<br>E-MAIL ADDRESS (Optional):<br>FAX NO. (Optional):<br>ATTORNEY FOR (Name): | | |

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES**

COURTHOUSE ADDRESS:

PLAINTIFF:

DEFENDANT:

| STIPULATION – DISCOVERY RESOLUTION | CASE NUMBER: |
|---|---|

**This stipulation is intended to provide a fast and informal resolution of discovery issues through limited paperwork and an informal conference with the Court to aid in the resolution of the issues.**

**The parties agree that:**

1. Prior to the discovery cut-off in this action, no discovery motion shall be filed or heard unless the moving party first makes a written request for an Informal Discovery Conference pursuant to the terms of this stipulation.

2. At the Informal Discovery Conference the Court will consider the dispute presented by parties and determine whether it can be resolved informally. Nothing set forth herein will preclude a party from making a record at the conclusion of an Informal Discovery Conference, either orally or in writing.

3. Following a reasonable and good faith attempt at an informal resolution of each issue to be presented, a party may request an Informal Discovery Conference pursuant to the following procedures:

   a. The party requesting the Informal Discovery Conference will:

      i. File a Request for Informal Discovery Conference with the clerk's office on the approved form (copy attached) and deliver a courtesy, conformed copy to the assigned department;

      ii. Include a brief summary of the dispute and specify the relief requested; and

      iii. Serve the opposing party pursuant to any authorized or agreed method of service that ensures that the opposing party receives the Request for Informal Discovery Conference no later than the next court day following the filing.

   b. Any Answer to a Request for Informal Discovery Conference must:

      i. Also be filed on the approved form (copy attached);

      ii. Include a brief summary of why the requested relief should be denied;

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| | |

    iii.  Be filed within two (2) court days of receipt of the Request; and

    iv.  Be served on the opposing party pursuant to any authorized or agreed upon method of service that ensures that the opposing party receives the Answer no later than the next court day following the filing.

c.  No other pleadings, including but not limited to exhibits, declarations, or attachments, will be accepted.

d.  If the Court has not granted or denied the Request for Informal Discovery Conference within ten (10) days following the filing of the Request, then it shall be deemed to have been denied. If the Court acts on the Request, the parties will be notified whether the Request for Informal Discovery Conference has been granted or denied and, if granted, the date and time of the Informal Discovery Conference, which must be within twenty (20) days of the filing of the Request for Informal Discovery Conference.

e.  If the conference is not held within twenty (20) days of the filing of the Request for Informal Discovery Conference, unless extended by agreement of the parties and the Court, then the Request for the Informal Discovery Conference shall be deemed to have been denied at that time.

4.  If (a) the Court has denied a conference or (b) one of the time deadlines above has expired without the Court having acted or (c) the Informal Discovery Conference is concluded without resolving the dispute, then a party may file a discovery motion to address unresolved issues.

5.  The parties hereby further agree that the time for making a motion to compel or other discovery motion is tolled from the date of filing of the Request for Informal Discovery Conference until (a) the request is denied or deemed denied or (b) twenty (20) days after the filing of the Request for Informal Discovery Conference, whichever is earlier, unless extended by Order of the Court.

It is the understanding and intent of the parties that this stipulation shall, for each discovery dispute to which it applies, constitute a writing memorializing a "specific later date to which the propounding [or demanding or requesting] party and the responding party have agreed in writing," within the meaning of Code Civil Procedure sections 2030.300(c), 2031.320(c), and 2033.290(c).

6.  Nothing herein will preclude any party from applying *ex parte* for appropriate relief, including an order shortening time for a motion to be heard concerning discovery.

7.  Any party may terminate this stipulation by giving twenty-one (21) days notice of intent to terminate the stipulation.

8.  References to "days" mean calendar days, unless otherwise noted. If the date for performing any act pursuant to this stipulation falls on a Saturday, Sunday or Court holiday, then the time for performing that act shall be extended to the next Court day.

| SHORT TITLE: | | CASE NUMBER: |
|---|---|---|
| | | |

**The following parties stipulate:**

Date: _____

_____
(TYPE OR PRINT NAME)

➤ _____
(ATTORNEY FOR PLAINTIFF)

Date: _____

_____
(TYPE OR PRINT NAME)

➤ _____
(ATTORNEY FOR DEFENDANT)

Date: _____

_____
(TYPE OR PRINT NAME)

➤ _____
(ATTORNEY FOR DEFENDANT)

Date: _____

_____
(TYPE OR PRINT NAME)

➤ _____
(ATTORNEY FOR DEFENDANT)

Date: _____

_____
(TYPE OR PRINT NAME)

➤ _____
(ATTORNEY FOR _____)

Date: _____

_____
(TYPE OR PRINT NAME)

➤ _____
(ATTORNEY FOR _____)

Date: _____

_____
(TYPE OR PRINT NAME)

➤ _____
(ATTORNEY FOR _____)

| NAME AND ADDRESS OF ATTORNEY OR PARTY WITHOUT ATTORNEY: | STATE BAR NUMBER | Reserved for Clerk's File Stamp |
|---|---|---|
| TELEPHONE NO.:  FAX NO. (Optional): | | |
| E-MAIL ADDRESS (Optional): | | |
| ATTORNEY FOR (Name): | | |

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES**

COURTHOUSE ADDRESS:

PLAINTIFF:

DEFENDANT:

| STIPULATION – EARLY ORGANIZATIONAL MEETING | CASE NUMBER: |
|---|---|

**This stipulation is intended to encourage cooperation among the parties at an early stage in the litigation and to assist the parties in efficient case resolution.**

**The parties agree that:**

1. The parties commit to conduct an initial conference (in-person or via teleconference or via videoconference) within 15 days from the date this stipulation is signed, *to discuss and consider whether there can be agreement on the following:*

   a. Are motions to challenge the pleadings necessary? If the issue can be resolved by amendment as of right, or if the Court would allow leave to amend, could an amended complaint resolve most or all of the issues a demurrer might otherwise raise? If so, the parties agree to work through pleading issues so that a demurrer need only raise issues they cannot resolve. Is the issue that the defendant seeks to raise amenable to resolution on demurrer, or would some other type of motion be preferable? Could a voluntary targeted exchange of documents or information by any party cure an uncertainty in the pleadings?

   b. Initial mutual exchanges of documents at the "core" of the litigation. (For example, in an employment case, the employment records, personnel file and documents relating to the conduct in question could be considered "core." In a personal injury case, an incident or police report, medical records, and repair or maintenance records could be considered "core.");

   c. Exchange of names and contact information of witnesses;

   d. Any insurance agreement that may be available to satisfy part or all of a judgment, or to indemnify or reimburse for payments made to satisfy a judgment;

   e. Exchange of any other information that might be helpful to facilitate understanding, handling, or resolution of the case in a manner that preserves objections or privileges by agreement;

   f. Controlling issues of law that, if resolved early, will promote efficiency and economy in other phases of the case. Also, when and how such issues can be presented to the Court;

   g. Whether or when the case should be scheduled with a settlement officer, what discovery or court ruling on legal issues is reasonably required to make settlement discussions meaningful, and whether the parties wish to use a sitting judge or a private mediator or other options as

| SHORT TITLE: | CASE NUMBER: |
|---|---|
|  |  |

discussed in the "Alternative Dispute Resolution (ADR) Information Package" served with the complaint;

h.  Computation of damages, including documents, not privileged or protected from disclosure, on which such computation is based;

i.  Whether the case is suitable for the Expedited Jury Trial procedures (see information at *www.lacourt.org* under "*Civil*" and then under "*General Information*").

2.  The time for a defending party to respond to a complaint or cross-complaint will be extended to _____ for the complaint, and _____ for the cross-
   (INSERT DATE)                                      (INSERT DATE)
complaint, which is comprised of the 30 days to respond under Government Code § 68616(b), and the 30 days permitted by Code of Civil Procedure section 1054(a), good cause having been found by the Civil Supervising Judge due to the case management benefits provided by this Stipulation. A copy of the General Order can be found at *www.lacourt.org* under "*Civil*", click on "*General Information*", then click on "*Voluntary Efficient Litigation Stipulations*".

3.  The parties will prepare a joint report titled "Joint Status Report Pursuant to Initial Conference and Early Organizational Meeting Stipulation, and if desired, a proposed order summarizing results of their meet and confer and advising the Court of any way it may assist the parties' efficient conduct or resolution of the case. The parties shall attach the Joint Status Report to the Case Management Conference statement, and file the documents when the CMC statement is due.

4.  References to "days" mean calendar days, unless otherwise noted. If the date for performing any act pursuant to this stipulation falls on a Saturday, Sunday or Court holiday, then the time for performing that act shall be extended to the next Court day

The following parties stipulate:

Date:

_____          ➤  _____
(TYPE OR PRINT NAME)                        (ATTORNEY FOR PLAINTIFF)

Date:

_____          ➤  _____
(TYPE OR PRINT NAME)                        (ATTORNEY FOR DEFENDANT)

Date:

_____          ➤  _____
(TYPE OR PRINT NAME)                        (ATTORNEY FOR DEFENDANT)

Date:

_____          ➤  _____
(TYPE OR PRINT NAME)                        (ATTORNEY FOR DEFENDANT)

Date:

_____          ➤  _____
(TYPE OR PRINT NAME)                        (ATTORNEY FOR _____)

Date:

_____          ➤  _____
(TYPE OR PRINT NAME)                        (ATTORNEY FOR _____)

Date:

_____          ➤  _____
(TYPE OR PRINT NAME)                        (ATTORNEY FOR _____)

| NAME AND ADDRESS OF ATTORNEY OR PARTY WITHOUT ATTORNEY: | STATE BAR NUMBER | Reserved for Clerk's File Stamp |
|---|---|---|
| TELEPHONE NO.:                          FAX NO. (Optional):<br>E-MAIL ADDRESS (Optional):<br>ATTORNEY FOR (Name): | | |

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES**

COURTHOUSE ADDRESS:

PLAINTIFF:

DEFENDANT:

| **INFORMAL DISCOVERY CONFERENCE**<br>(pursuant to the Discovery Resolution Stipulation of the parties) | CASE NUMBER: |
|---|---|

1. This document relates to:
   - ☐ Request for Informal Discovery Conference
   - ☐ Answer to Request for Informal Discovery Conference

2. Deadline for Court to decide on Request: _____ (insert date 10 calendar days following filing of the Request).

3. Deadline for Court to hold Informal Discovery Conference: _____ (insert date 20 calendar days following filing of the Request).

4. For a Request for Informal Discovery Conference, **briefly** describe the nature of the discovery dispute, including the facts and legal arguments at issue. For an Answer to Request for Informal Discovery Conference, **briefly** describe why the Court should deny the requested discovery, including the facts and legal arguments at issue.

**INFORMAL DISCOVERY CONFERENCE**
(pursuant to the Discovery Resolution Stipulation of the parties)

| NAME AND ADDRESS OF ATTORNEY OR PARTY WITHOUT ATTORNEY: | STATE BAR NUMBER | Reserved for Clerk's File Stamp |
|---|---|---|
| TELEPHONE NO.:    FAX NO. (Optional):<br>E-MAIL ADDRESS (Optional):<br>ATTORNEY FOR (Name): | | |

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES**

COURTHOUSE ADDRESS:

PLAINTIFF:

DEFENDANT:

| STIPULATION AND ORDER – MOTIONS IN LIMINE | CASE NUMBER: |
|---|---|

This stipulation is intended to provide fast and informal resolution of evidentiary issues through diligent efforts to define and discuss such issues and limit paperwork.

**The parties agree that:**

1. At least ____ days before the final status conference, each party will provide all other parties with a list containing a one paragraph explanation of each proposed motion in limine. Each one paragraph explanation must identify the substance of a single proposed motion in limine and the grounds for the proposed motion.

2. The parties thereafter will meet and confer, either in person or via teleconference or videoconference, concerning all proposed motions in limine. In that meet and confer, the parties will determine:

   a. Whether the parties can stipulate to any of the proposed motions. If the parties so stipulate, they may file a stipulation and proposed order with the Court.

   b. Whether any of the proposed motions can be briefed and submitted by means of a short joint statement of issues. For each motion which can be addressed by a short joint statement of issues, a short joint statement of issues must be filed with the Court 10 days prior to the final status conference. Each side's portion of the short joint statement of issues may not exceed three pages. The parties will meet and confer to agree on a date and manner for exchanging the parties' respective portions of the short joint statement of issues and the process for filing the short joint statement of issues.

3. All proposed motions in limine that are not either the subject of a stipulation or briefed via a short joint statement of issues will be briefed and filed in accordance with the California Rules of Court and the Los Angeles Superior Court Rules.

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| | |

## The following parties stipulate:

Date:

_____
(TYPE OR PRINT NAME)

Date:

_____
(TYPE OR PRINT NAME)

Date:

_____
(TYPE OR PRINT NAME)

Date:

_____
(TYPE OR PRINT NAME)

Date:

_____
(TYPE OR PRINT NAME)

Date:

_____
(TYPE OR PRINT NAME)

Date:

_____
(TYPE OR PRINT NAME)

➤ _____
(ATTORNEY FOR PLAINTIFF)

➤ _____
(ATTORNEY FOR DEFENDANT)

➤ _____
(ATTORNEY FOR DEFENDANT)

➤ _____
(ATTORNEY FOR DEFENDANT)

➤ _____
(ATTORNEY FOR _____)

➤ _____
(ATTORNEY FOR _____)

➤ _____
(ATTORNEY FOR _____)

## THE COURT SO ORDERS.

Date: _____

_____
JUDICIAL OFFICER

| SHORT TITLE: Optikal Noize, Inc. v. AAB Productions, Inc., et al. | CASE NUMBER BC 0 29 095 |
|---|---|

# CIVIL CASE COVER SHEET ADDENDUM AND
## STATEMENT OF LOCATION
### (CERTIFICATE OF GROUNDS FOR ASSIGNMENT TO COURTHOUSE LOCATION)

> This form is required pursuant to Local Rule 2.3 in all new civil case filings in the Los Angeles Superior Court.

**Step 1:** After completing the Civil Case Cover Sheet (Judicial Council form CM-010), find the exact case type in Column A that corresponds to the case type indicated in the Civil Case Cover Sheet.

**Step 2:** In Column B, check the box for the type of action that best describes the nature of the case.

**Step 3:** In Column C, circle the number which explains the reason for the court filing location you have chosen.

> **Applicable Reasons for Choosing Court Filing Location (Column C)**

1. Class actions must be filed in the Stanley Mosk Courthouse, Central District.
2. Permissive filing in central district.
3. Location where cause of action arose.
4. Mandatory personal injury filing in North District.
5. Location where performance required or defendant resides.
6. Location of property or permanently garaged vehicle.
7. Location where petitioner resides.
8. Location wherein defendant/respondent functions wholly.
9. Location where one or more of the parties reside.
10. Location of Labor Commissioner Office.
11. Mandatory filing location (Hub Cases – unlawful detainer, limited non-collection, limited collection, or personal injury).

|  | A Civil Case Cover Sheet Category No. | B Type of Action (Check only one) | C Applicable Reasons - See Step 3 Above |
|---|---|---|---|
| **Auto Tort** | Auto (22) | ☐ A7100  Motor Vehicle - Personal Injury/Property Damage/Wrongful Death | 1, 4, 11 |
| | Uninsured Motorist (46) | ☐ A7110  Personal Injury/Property Damage/Wrongful Death – Uninsured Motorist | 1, 4, 11 |
| **Other Personal Injury/ Property Damage/Wrongful Death Tort** | Asbestos (04) | ☐ A6070  Asbestos Property Damage | 1, 11 |
| | | ☐ A7221  Asbestos - Personal Injury/Wrongful Death | 1, 11 |
| | Product Liability (24) | ☐ A7260  Product Liability (not asbestos or toxic/environmental) | 1, 4, 11 |
| | Medical Malpractice (45) | ☐ A7210  Medical Malpractice - Physicians & Surgeons | 1, 4, 11 |
| | | ☐ A7240  Other Professional Health Care Malpractice | 1, 4, 11 |
| | Other Personal Injury Property Damage Wrongful Death (23) | ☐ A7250  Premises Liability (e.g., slip and fall) | 1, 4, 11 |
| | | ☐ A7230  Intentional Bodily Injury/Property Damage/Wrongful Death (e.g., assault, vandalism, etc.) | 1, 4, 11 |
| | | ☐ A7270  Intentional Infliction of Emotional Distress | 1, 4, 11 |
| | | ☐ A7220  Other Personal Injury/Property Damage/Wrongful Death | 1, 4, 11 |

LACIV 109 (Rev 2/16)
LASC Approved 03-04

**CIVIL CASE COVER SHEET ADDENDUM
AND STATEMENT OF LOCATION**

Local Rule 2.3
Page 1 of 4

| SHORT TITLE: Optikal Noize, Inc. v. AAB Productions, Inc., et al. | CASE NUMBER | |
|---|---|---|

| | A<br>Civil Case Cover Sheet<br>Category No. | B<br>Type of Action<br>(Check only one) | C Applicable<br>Reasons - See Step 3<br>Above |
|---|---|---|---|
| **Non-Personal Injury/ Property Damage/ Wrongful Death Tort** | Business Tort (07) | ☐ A6029  Other Commercial/Business Tort (not fraud/breach of contract) | 1, 2, 3 |
| | Civil Rights (08) | ☐ A6005  Civil Rights/Discrimination | 1, 2, 3 |
| | Defamation (13) | ☐ A6010  Defamation (slander/libel) | 1, 2, 3 |
| | Fraud (16) | ☐ A6013  Fraud (no contract) | 1, 2, 3 |
| | Professional Negligence (25) | ☐ A6017  Legal Malpractice | 1, 2, 3 |
| | | ☐ A6050  Other Professional Malpractice (not medical or legal) | 1, 2, 3 |
| | Other (35) | ☐ A6025  Other Non-Personal Injury/Property Damage tort | 1, 2, 3 |
| **Employment** | Wrongful Termination (36) | ☐ A6037  Wrongful Termination | 1, 2, 3 |
| | Other Employment (15) | ☐ A6024  Other Employment Complaint Case | 1, 2, 3 |
| | | ☐ A6109  Labor Commissioner Appeals | 10 |
| **Contract** | Breach of Contract/ Warranty (06)<br>(not insurance) | ☐ A6004  Breach of Rental/Lease Contract (not unlawful detainer or wrongful eviction) | 2, 5 |
| | | ☐ A6008  Contract/Warranty Breach -Seller Plaintiff (no fraud/negligence) | 2, 5 |
| | | ☐ A6019  Negligent Breach of Contract/Warranty (no fraud) | 1, 2, 5 |
| | | ☑ A6028  Other Breach of Contract/Warranty (not fraud or negligence) | 1, 2, 5 |
| | Collections (09) | ☐ A6002  Collections Case-Seller Plaintiff | 5, 6, 11 |
| | | ☐ A6012  Other Promissory Note/Collections Case | 5, 11 |
| | | ☐ A6034  Collections Case-Purchased Debt (Charged Off Consumer Debt Purchased on or after January 1, 2014) | 5, 6, 11 |
| | Insurance Coverage (18) | ☐ A6015  Insurance Coverage (not complex) | 1, 2, 5, 8 |
| | Other Contract (37) | ☐ A6009  Contractual Fraud | 1, 2, 3, 5 |
| | | ☐ A6031  Tortious Interference | 1, 2, 3, 6 |
| | | ☑ A6027  Other Contract Dispute(not breach/insurance/fraud/negligence) | 1, 2, 3, 8, 9 |
| **Real Property** | Eminent Domain/Inverse Condemnation (14) | ☐ A7300  Eminent Domain/Condemnation      Number of parcels_____ | 2, 6 |
| | Wrongful Eviction (33) | ☐ A6023  Wrongful Eviction Case | 2, 6 |
| | Other Real Property (26) | ☐ A6018  Mortgage Foreclosure | 2, 6 |
| | | ☐ A6032  Quiet Title | 2, 6 |
| | | ☐ A6060  Other Real Property (not eminent domain, landlord/tenant, foreclosure) | 2, 6 |
| **Unlawful Detainer** | Unlawful Detainer-Commercial (31) | ☐ A6021  Unlawful Detainer-Commercial (not drugs or wrongful eviction) | 6, 11 |
| | Unlawful Detainer-Residential (32) | ☐ A6020  Unlawful Detainer-Residential (not drugs or wrongful eviction) | 6, 11 |
| | Unlawful Detainer-Post-Foreclosure (34) | ☐ A6020F Unlawful Detainer-Post-Foreclosure | 2, 6, 11 |
| | Unlawful Detainer-Drugs (38) | ☐ A6022  Unlawful Detainer-Drugs | 2, 6, 11 |

LACIV 109 (Rev 2/16)

LASC Approved 03-04

CIVIL CASE COVER SHEET ADDENDUM
AND STATEMENT OF LOCATION

Local Rule 2.3

Page 2 of 4

| SHORT TITLE: Optikal Noize, Inc. v. AAB Productions, Inc., et al. | CASE NUMBER |
|---|---|

| | A (Civil Case Cover Sheet Category No.) | B Type of Action (Check only one) | C Applicable Reasons - See Step 3 Above |
|---|---|---|---|
| **Judicial Review** | Asset Forfeiture (05) | ☐ A6108  Asset Forfeiture Case | 2, 3, 6 |
| | Petition re Arbitration (11) | ☐ A6115  Petition to Compel/Confirm/Vacate Arbitration | 2, 5 |
| | Writ of Mandate (02) | ☐ A6151  Writ - Administrative Mandamus | 2, 8 |
| | | ☐ A6152  Writ - Mandamus on Limited Court Case Matter | 2 |
| | | ☐ A6153  Writ - Other Limited Court Case Review | 2 |
| | Other Judicial Review (39) | ☐ A6150  Other Writ /Judicial Review | 2, 8 |
| **Provisionally Complex Litigation** | Antitrust/Trade Regulation (03) | ☐ A6003  Antitrust/Trade Regulation | 1, 2, 8 |
| | Construction Defect (10) | ☐ A6007  Construction Defect | 1, 2, 3 |
| | Claims Involving Mass Tort (40) | ☐ A6006  Claims Involving Mass Tort | 1, 2, 8 |
| | Securities Litigation (28) | ☐ A6035  Securities Litigation Case | 1, 2, 8 |
| | Toxic Tort Environmental (30) | ☐ A6036  Toxic Tort/Environmental | 1, 2, 3, 8 |
| | Insurance Coverage Claims from Complex Case (41) | ☐ A6014  Insurance Coverage/Subrogation (complex case only) | 1, 2, 5, 8 |
| **Enforcement of Judgment** | Enforcement of Judgment (20) | ☐ A6141  Sister State Judgment | 2, 5, 11 |
| | | ☐ A6160  Abstract of Judgment | 2, 6 |
| | | ☐ A6107  Confession of Judgment (non-domestic relations) | 2, 9 |
| | | ☐ A6140  Administrative Agency Award (not unpaid taxes) | 2, 8 |
| | | ☐ A6114  Petition/Certificate for Entry of Judgment on Unpaid Tax | 2, 8 |
| | | ☐ A6112  Other Enforcement of Judgment Case | 2, 8, 9 |
| **Miscellaneous Civil Complaints** | RICO (27) | ☐ A6033  Racketeering (RICO) Case | 1, 2, 8 |
| | Other Complaints (Not Specified Above) (42) | ☐ A6030  Declaratory Relief Only | 1, 2, 8 |
| | | ☐ A6040  Injunctive Relief Only (not domestic/harassment) | 2, 8 |
| | | ☐ A6011  Other Commercial Complaint Case (non-tort/non-complex) | 1, 2, 8 |
| | | ☐ A6000  Other Civil Complaint (non-tort/non-complex) | 1, 2, 8 |
| **Miscellaneous Civil Petitions** | Partnership Corporation Governance (21) | ☐ A6113  Partnership and Corporate Governance Case | 2, 8 |
| | Other Petitions (Not Specified Above) (43) | ☐ A6121  Civil Harassment | 2, 3, 9 |
| | | ☐ A6123  Workplace Harassment | 2, 3, 9 |
| | | ☐ A6124  Elder/Dependent Adult Abuse Case | 2, 3, 9 |
| | | ☐ A6190  Election Contest | 2 |
| | | ☐ A6110  Petition for Change of Name/Change of Gender | 2, 7 |
| | | ☐ A6170  Petition for Relief from Late Claim Law | 2, 3, 8 |
| | | ☐ A6100  Other Civil Petition | 2, 9 |

**CIVIL CASE COVER SHEET ADDENDUM
AND STATEMENT OF LOCATION**

| SHORT TITLE: Optikal Noize, Inc. v. AAB Productions, Inc., et al. | CASE NUMBER |
|---|---|

**Step 4: Statement of Reason and Address:** Check the appropriate boxes for the numbers shown under Column C for the type of action that you have selected. Enter the address which is the basis for the filing location, including zip code. (No address required for class action cases).

| REASON: <br> ☑ 1. ☑ 2. ☐ 3. ☐ 4. ☑ 5. ☐ 6. ☐ 7. ☐ 8. ☐ 9. ☐ 10. ☐ 11. | ADDRESS: <br> 580 Terrill Ave. |
|---|---|

| CITY: <br> Los Angeles | STATE: <br> CA | ZIP CODE: <br> 90042 |
|---|---|---|

**Step 5: Certification of Assignment:** I certify that this case is properly filed in the _Central_ District of the Superior Court of California, County of Los Angeles [Code Civ. Proc., §392 et seq., and Local Rule 2.3(a)(1)(E)].

Dated: 08/01/2016

_____
(SIGNATURE OF ATTORNEY/FILING PARTY)

**PLEASE HAVE THE FOLLOWING ITEMS COMPLETED AND READY TO BE FILED IN ORDER TO PROPERLY COMMENCE YOUR NEW COURT CASE:**

1. Original Complaint or Petition.

2. If filing a Complaint, a completed Summons form for issuance by the Clerk.

3. Civil Case Cover Sheet, Judicial Council form CM-010.

4. Civil Case Cover Sheet Addendum and Statement of Location form, LACIV 109, LASC Approved 03-04 (Rev. 02/16).

5. Payment in full of the filing fee, unless there is court order for waiver, partial or scheduled payments.

6. A signed order appointing the Guardian ad Litem, Judicial Council form CIV-010, if the plaintiff or petitioner is a minor under 18 years of age will be required by Court in order to issue a summons.

7. Additional copies of documents to be conformed by the Clerk. Copies of the cover sheet and this addendum must be served along with the summons and complaint, or other initiating pleading in the case.

Zein E. Obagi, Jr. (State Bar No. 264139)
zo@obagilaw.com
Ben B. Jakovljevic (State Bar No. 301523)
bbj@obagilaw.com
OBAGI LAW GROUP, P.C.
433 North Camden Drive, Suite 400
Beverly Hills, CA 90210-4408
Telephone: (424) 284-2401
Facsimile: (310) 734-1814

Attorneys for Plaintiff
OPTIKAL NOIZE, INC.

CONFORMED COPY
ORIGINAL FILED
Superior Court of California
County of Los Angeles

AUG 01 2016

Sherri R. Carter, Executive Officer/Clerk
By: Judi Lara, Deputy

# SUPERIOR COURT OF THE STATE OF CALIFORNIA

## FOR THE COUNTY OF LOS ANGELES

OBAGI LAW GROUP, P.C.
ATTORNEYS AT LAW

| | |
|---|---|
| OPTIKAL NOIZE, INC., a California corporation, | Case No.: BC 6 2 9 0 9 5 |
| Plaintiff, | COMPLAINT FOR: |
| v. | 1. BREACH OF EXPRESS ORAL AND WRITTEN CONTRACT |
| AAB PRODUCTIONS, INC., a New York corporation; THE FOUNDATION FOR AIDS RESEARCH, a New York not-for-profit corporation, dba amfAR; HARRY WINSTON, INC., a New York corporation; and DOES 1-100, INCLUSIVE | 2. BREACH OF EXPRESS ORAL CONTRACT |
| | 3. BREACH OF IMPLIED-IN-FACT CONTRACT |
| | 4. INTENTIONAL INTERFERENCE WITH PROSPECTIVE ECONOMIC RELATIONS |
| Defendants. | 5. NEGLIGENT INTERFERENCE WITH PROSPECTIVE ECONOMIC RELATIONS |
| | 6. MISAPPROPRIATION OF TRADE SECRETS (CAL. CIV. CODE § 3426 ET SEQ.) |
| | 7. BREACH OF FIDUCIARY DUTY |
| | 8. RESTITUTION/UNJUST ENRICHMENT |
| | 9. PROMISSORY ESTOPPEL |
| | JURY TRIAL DEMANDED |
| | UNLIMITED JURISDICTION |

Plaintiff Optikal Noize, Inc. hereby alleges against as follows:

## I.     NATURE OF ACTION

1.     This action arises out of defendants' failure to pay Plaintiff the fee it is owed for providing creative consulting services.   Plaintiff's services were instrumental in establishing a multi-million dollar partnership between defendants, but the final deal was agreed to behind Plaintiff's back and without rendering any payment for services rendered and contractually agreed upon.

2.     Defendants AAB Productions and amfAR, on the one hand, and Harry Winston, Inc., on the other, were introduced to one another as having mutually appealing opportunities and resources for sponsorship, respectively, through Plaintiff.

3.     Defendant The Foundation for AIDS Research (**amfAR**), with the assistance of its agent Defendant AAB Productions, was seeking sponsors for its charity galas.   Defendant Harry Winston, meanwhile, was exploring sponsorship and brand integration opportunities with Plaintiff.

4.     Plaintiff, in order to protect its own interests prior to introducing the parties, AAB into a non-disclosure agreement on behalf of itself and amfAR.   All parties involved herein agreed that Plaintiff would receive a consulting fee based on the final deal's value, in exchange for providing a deal lead and serving as the intermediary between the two sides.

5.     Plaintiff did introduce and facilitate negotiations between Harry Winston and amfAR regarding long-term sponsorship opportunities, including a multi-year 1.25 million dollar proposal.   However, the Defendants then broke their promises to Plaintiff by surreptitiously engaging in direct negotiations and agreeing to a 53-million dollar partnership deal, all without Plaintiff or paying Plaintiff's commission.   They have refused to pay Plaintiff anything and have rebuffed Plaintiff's efforts to resolve the dispute without litigation.   This lawsuit seeks

OBAGI LAW GROUP, P.C.
ATTORNEYS AT LAW

1  redress for the consulting fees owed, along with other damages that have resulted

2  from the defendants' circumventing deal.

3  ## II.  PARTIES

4      6.    Plaintiff Optikal Noize, Inc. (**Plaintiff** or **ON**) is a corporation

5  incorporated and existing under the laws of the State of California with its principal

6  place of business in Los Angeles, California.  ON is a creative consulting agency

7  that helps integrate premium brands into special projects and events.

8      7.    Nancy Epao Cihlar (**Epao**) is ON's CEO and Andreas Kutzer (**Kutzer**)

9  is ON's Vice President.  Both worked in these capacities at all times relevant to this

10 lawsuit.

11     8.    Defendant Harry Winston, Inc. is a New York corporation doing

12 business in California.  Harry Winston, which is owned by the Swiss company, The

13 Swatch Group Ltd. (**TSG**), sells luxury jewelry and watches.  Fadi Ghalayini is, and

14 at all times relevant to this lawsuit was, Harry Winston's Global Vice President of

15 Sales.

16     9.    Defendant The Foundation for AIDS Research dba amfAR is and was,

17 at all times relevant to this lawsuit, an international nonprofit organization

18 headquartered in New York which holds fundraisers and events in California.

19 Defendant amfAR is dedicated to AIDS/HIV research, education, and advocacy.

20 Mr. Shameek Bose  was at all times relevant to this lawsuit amfAR's Business

21 Partnerships Manager.

22     10.   Defendant AAB Productions, Inc. ("AAB") is and was, at all times

23 relevant to this lawsuit, a New York event planning and production corporation

24 doing business in California.  Andrew Boose ("**Boose**") is, and at all times relevant

25 to this lawsuit was, AAB's CEO.

26     11.   Defendants Harry Winston, amfAR, and AAB and their respective

27 agents are sometimes collectively referred to in this Complaint as the defendants or

28 Defendants.

OBAGI LAW GROUP, P.C.
ATTORNEYS AT LAW

12.    Other wrongful acts and/or omissions constituting breach by the Defendants are presently unknown, but will be proven at trial. If necessary, ON may seek leave of court to amend this complaint once such additional facts are ascertained through discovery.

13.    Plaintiff ON is currently unaware of the true names and capacities of defendants sued herein as Does 1 through 100, inclusive, and therefore sues defendants by such fictitious names. ON will amend this Complaint to allege their true names and capacities when ascertained. ON alleges that each of the fictitiously named defendants is responsible in some manner for the occurrences herein alleged, and that ON's damages were proximately caused by those defendants. Each reference in this Complaint to "defendant", "defendants", "Defendants" or a specifically named defendant, refers also to all defendants sued under fictitious names.

14.    At all times herein mentioned, each of the Defendants, including all defendants sued under fictitious names, was the agent and/or employee of each of the remaining defendants, and in doing the things hereinafter alleged, was acting within the course and scope of his/her/its agency and/or employment.

### III.    JURISDICTION & VENUE

15.    The Superior Court of California for the County of Los Angeles has jurisdiction over this matter, and is one correct venue for this action, because the Defendants engaged Plaintiff, a California corporation based within the County of Los Angeles, to provide consulting services, which services were rendered in the County of Los Angeles. Moreover, pursuant to a non-disclosure agreement, Defendants amfAR and AAB agreed that Los Angeles would serve as the exclusive venue in event of dispute. Also, on information and belief, each of the Defendants has recurring business activity in the County of Los Angeles.

16.    The amount of damages alleged in this controversy falls within the unlimited jurisdiction of this court.

OBAGI LAW GROUP, P.C.
ATTORNEYS AT LAW

17.    The Superior Court of Los Angeles County has personal jurisdiction over each of the defendants herein because defendants were aware that ON was a California corporation, doing business in California, and indeed knew that the performance of their obligations to ON was due in California.

## IV.    GENERAL ALLEGATIONS

### A.    *The NDA between ON and AAB on behalf of amfAR*

18.    Plaintiff ON is a creative consulting agency that specializes in integrating luxury brands into international charity and entertainment events through sponsorships or other support.

19.    On or about April 19, 2013, ON contacted amfAR's Shameek Bose and AAB's Andrew Boose to discuss sponsorship opportunities for amfAR's international charity galas. Discussions continued between ON, AAB, and amfAR through the end of April 2013, but no deal came to fruition during this timeframe.

20.    On September 20, 2013, ON's Andreas Kutzer sent an email to AAB's Boose to resume discussions with amfAR.

21.    In order to safely discuss details about sponsorship and partnership opportunities without compromising ON's confidential business information or services, ON informed amfAR's Bose that it required amfAR to covenant not to disclose or act on any opportunity without first obtaining ON's consent or paying ON's consulting fee.

22.    In discussing amfAR's partnership opportunities, Bose directed ON to communicate directly with Boose at AAB. AAB was also listed on amfAR's website as amfAR's exclusive agent for sponsorships and partnerships.

23.    On October 2, 2013, a non-circumvention, non-disclosure and compensation agreement ("NDA") was executed between Epao and Kutzer on behalf of ON, and Boose on behalf of AAB and amfAR.

24.    The NDA explicitly contemplates that its purpose is to start a working business relationship in which ON would introduce and engage a potential sponsor

OBAGI LAW GROUP, P.C.
ATTORNEYS AT LAW

for AAB's production of amfAR galas and events in exchange for a fee. The NDA expressly required AAB to keep all information about ON's business sources and affiliates strictly confidential, unless AAB had a pre-existing relationship with the source, or unless ON gave written authorization.

B. *Harry Winston's Independent Engagement of ON*

25.    Separately, ON had been presenting sponsorship opportunities to TSG for several years. In or about 2013, Harry Winston, a subsidiary of TSG, engaged ON to provide consulting services and use ON's industry expertise to find sponsorship opportunities. As discussed below, Harry Winston was aware of and agreed to pay ON's consulting fee. The fee was contingent and would be paid by Harry Winston in the event an opportunity presented by ON was pursued and ultimately consummated by Harry Winston.

26.    On September 26, 2013, ON's Epao sent an email to Harry Winston's Ghalayini regarding two potential sponsorship opportunities for Harry Winston. The first opportunity pertained to international galas presented by The Eva Longoria / The Global Gift Foundations (together, "**GGF**"). The second opportunity pertained to galas presented by amfAR.

27.    Prior to this email, Epao and Ghalayini had met over the phone, and the parties spoke numerous times after this email through a variety of means of communication. Neither Ghalayini nor anyone else at Harry Winston ever cited a pre-existing relationship with amfAR. Nor did they indicate in any way whatsoever that they were already in negotiations with amfAR – which would have been the natural reaction of any party who was hiring a consultant to introduce it to new consulting opportunities, but instead was introduced to an old one.

28.    On October 1, 2013, Ghalayini sent ON an email stating that Harry Winston was interested in serving as the exclusive jewelry and watch brand for four amfAR gala events totaling $900,000, and asking ON "Please also see here what can be done.... This is a long term partnership and we would like to make it work."

OBAGI LAW GROUP, P.C.
ATTORNEYS AT LAW

29.    The following day, ON and AAB executed the NDA, and ON took steps to form a partnership between Harry Winston and AAB/amfAR (the "amfAR Partnership").

30.    At various stages, ON alternated communications between AAB and amfAR regarding amfAR events. For example, on October 9, 2013, AAB's Boose sent Kutzer an email regarding, among other opportunities, a tentatively proposed agreement for sponsorship of an amfAR India event in November 2013.

31.    Then, on October 15, 2013, amfAR's Bose and Kutzer exchanged several emails, including an email attaching a sample contract outlining amfAR's terms for a sponsorship with Harry Winston. Bose advised in the email message that, "[o]nce you can confirm 100% the partnership with Harry Winston we can discuss any commissions." AAB was not copied on the October 15 email exchange; apparently amfAR was ignorant of the agreement AAB had made with ON.

C. *The GGF-Harry Winston Partnership*

32.    While ON was developing Harry Winston's opportunity to partner with amfAR, it simultaneously developed and ultimately succeeded in bringing Harry Winston together with GGF for a partnership worth $600,000 (the "GGF Partnership").

33.    In the lead-up to and during the GGF Partnership, ON repeatedly explained its fee structure to Harry Winston, including in a September 30, 2013 email from Epao to Ghalayani stating that: "Should Harry Winston enter into this agreement, Optikal Noize Inc. would humble [sic] ask for an agency fee of 10% of the final budget."

34.    On November 29, 2013, Epao emailed Ghalayani ON's invoice for its ten percent consulting fee for services provided in connection with the GGF Partnership. Harry Winston – admitting its obligation to ON and demonstrating its awareness of the terms of the parties' agreement – timely paid this consulting fee, which was $60,000, or ten percent of the $600,000 sum.

OBAGI LAW GROUP, P.C.
ATTORNEYS AT LAW

35.   Subsequently, ON discovered that GGF intentionally misrepresented its charity status in the United States to both ON and Harry Winston, and that the founder and CEO of The Global Gift Foundation had a history of international financial fraud.

36.   Although ON was as ignorant as Harry Winston of GGF's material misrepresentations, Epao notified Ghalayini in writing of GGF's actions. This was done in order for ON to maintain complete transparency with its client.

37.   On December 10, 2013, Epao met in New York with members of the Harry Winston marketing teams, including Ghalayini. The parties mutually agreed to take steps to end the GGF Partnership, and discussed details regarding the amfAR opportunity.

D. *The amfAR-Harry Winston Partnership*

38.   On February 14, 2014, Kutzer sent Bose an email proposal expressing Harry Winston's interest in serving as the exclusive jewelry and watch sponsor for amfAR for two event series for a minimum of two years (2015 and 2016). Kutzer's email included proposed sponsorship levels for eight events totaling $1.25 million.

39.   The proposal detailed that, if amfAR agreed to Harry Winston's proposal, ON would send a Letter of Interest/Intent from Harry Winston to amfAR, and the sides would work toward finalizing the agreement. Once a final draft of the agreement was consummated, ON would schedule a meeting between Harry Winston and amfAR to sign the contract and start discussing event planning topics.

40.   Kutzer's February 14 email identified ON's continuing role in the amfAR Partnership:

Optikal Noize, the creative agency for Harry Winston / The Swatch Group / amfAR partnerhsip [sic], will remain your main contact and will handle all details for this integration. I would like to discuss with you an agency fee which includes covering our costs for travels expenses and our services for the duration of this partnership. We

OBAGI LAW GROUP, P.C.
ATTORNEYS AT LAW

would look at a 5% commission from amfAR should this agreement gets signed, let's discuss. However, as I have stated to you before, we are open to discussing a number that works well for us both as we are excited and looking forward to forging a new relationship with amfAR to benefit all involved.

41.    Kutzer confirmed over a telephone call with Bose that the ON commission rate would be 15% of the deal, not 5%, as was mistakenly cited in the email. At no point did Bose dispute, either over the telephone or via email, that amfAR would pay ON a commission fee.

42.    From late February to early March 2014, ON and amfAR exchanged multiple emails to plan a meeting to continue brainstorming Harry Winston sponsorship possibilities, with key figures from both ON and amfAR attending. The meeting was scheduled for March 18, 2014; however, that meeting was cancelled.

43.    At all relevant times, orally, in writing, and by their conduct, the Defendants held themselves out in a manner that they were acting in good faith and complying with the terms of their respective agreements with ON.

44.    On or about March 27, 2014, ON learned that AAB and amfAR had engaged in direct sponsorship and partnership negotiations with Harry Winston.

45.    On or about April 8, 2014, amfAR cancelled a meeting with ON, stating that the meeting would be postponed until the GGF Partnership between Harry Winston and GGF was resolved. But Harry Winston and ON's agreement relative to the amfAR sponsorship opportunity was not conditions on any other matters precedent or subsequent – except for the consummation of a Harry Winston-amfAR partnership.

46.    In January 2015, *Forbes* reported that Harry Winston announced a milestone $53 million partnership with amfAR, an agreement that represented the single largest corporate partnership in amfAR's history.

OBAGI LAW GROUP, P.C.
ATTORNEYS AT LAW

47. ON has corresponded with each of the Defendants in an attempt to collect on its consulting fees with respect to the amfAR Partnership, but all the Defendants have refused to pay ON their financial obligation to it.

## V. FIRST CAUSE OF ACTION FOR BREACH OF EXPRESS ORAL AND WRITTEN CONTRACT

### (Plaintiff v. AAB, amfAR, and Does 1-100, inclusive)

48. Plaintiff hereby incorporates by reference and realleges each of the allegations set forth in the preceding paragraphs.

49. The NDA is a written contract which ON entered into with AAB and amfAR on October 2, 2013. Andrew Boose signed the NDA on behalf of both AAB and amfAR, per Shameek Bose's request to have ON work through AAB regarding potential business opportunities with amfAR.

50. The NDA explicitly noted in the opening paragraphs that the agreement was being created in order for ON to introduce a potential sponsor to AAB for amfAR galas and events.

51. The NDA required, among other things, that AAB, on its own behalf and impliedly on amfAR's behalf since it was acting as amfAR's event production agent, would not solicit or accept any business from ON's source or source "Affiliates" without ON's express written authorization. AAB agreed not to share the contact information of ON's source with third parties or correspond with the source.

52. Further, under ¶ I.D of the NDA, AAB agreed that, unless AAB had a pre-existing relationship with the source, or unless ON gave prior written authorization, AAB would not seek to enter into a "business transaction with the source, that has been provided by ON to this agreement" and AAB also agreed "not to make use of a third party to circumvent this clause."

53. Under ¶ I.E of the NDA, if AAB circumvented the NDA, whether directly or indirectly, then ON would be entitled to its maximum service fee, plus all

OBAGI LAW GROUP, P.C.
ATTORNEYS AT LAW

expenses. Although the NDA did not establish ON's exact commission, AAB agreed under ¶ I.F of the NDA that ON would be owed a commission, which the parties would agree to on a case-by-case basis.

54.    ON subsequently orally agreed with both AAB and amfAR that ON would provide sources and opportunities for sponsorships and partnerships of various amfAR fundraising events. In exchange, ON's consulting services would be paid via commission. The commission was not a fixed amount, but rather was a contingent fee equaling 15% of the value of any deal between amfAR/AAB and another sponsoring party. Since the commission was contingent, it would be paid only on entry to a partnership or sponsorship deal by amfAR/AAB and a third party.

55.    The fact ON would receive a consulting commission fee was acknowledged by amfAR. On October 15, 2013, Bose advised via email that, once ON could confirm the partnership with Harry Winston, "we can discuss any commissions." Then, on February 14, 2014, Kutzer and Bose confirmed that ON would receive a fifteen percent commission on the deal with Harry Winston, which at that time was valued at 1.25 million dollars.

56.    ON performed all duties required of it under the NDA and oral contract between AAB and amfAR, and neither of the Defendants were excused from performing their contractual obligations.

57.    ON's duties consisted of providing consulting services and mutual beneficial business opportunities to AAB and amfAR, including by introducing Harry Winston as a lead. In reliance on the covenants made by AAB and amfAR in the NDA and in subsequent conversations, ON revealed Harry Winston as a proposed sponsor for amfAR events in 2013 and beyond, laying the groundwork for what all parties hoped would become a long-term partnership.

58.    The information that ON disclosed was highly confidential and proprietary, in that it included, among other things, specific deal leads and

OBAGI LAW GROUP, P.C.
ATTORNEYS AT LAW

opportunities that were not known to the general public. Neither AAB nor amfAR
identified that they had a prior existing relationship with Harry Winston.

59.    ON took all reasonable and prudent precautions, including by the
execution of the NDA, to keep confidential information regarding its sources secret
and protect this information from unauthorized use.

60.    Defendants AAB and amfAR breached their obligations under the
NDA and oral contract by engaging directly in negotiations with Harry Winston,
and then agreeing to a 53 million dollar partnership, all without ON's prior written
authorization or payment to ON. Without ON's services, neither AAB nor amfAR
would have been aware of or able to procure this partnership with Harry Winston.

61.    ON's consulting fee, based on a fifteen percent commission of the
ultimate deal, would be 7.95 million dollars, or fifteen percent of 53 million dollars.
However, AAB and amfAR have refused to pay ON anything for its services,
instead insisting that Harry Winston owed ON its entire fee.

62.    No amount of reasonable protections could have prevented the
Defendants' breaches of the NDA and oral agreements, which were willful and
deliberate, and in utter and conscious disregard of the contractual terms and ON's
rights.

63.    Because of the breaches by AAB and amfAR of their NDA and oral
agreements with ON, ON has been injured as a consequence of the fact that ON's
trade secrets and information have been used without ON's consent and without
compensation.

64.    As a direct result of the Defendants' breaches of the NDA and oral
contract, ON has been damaged in an amount to be determined at trial, but believed
to exceed 7.95 million dollars between AAB and amfAR collectively, together with
interest thereon.

## VI. SECOND CAUSE OF ACTION FOR BREACH OF EXPRESS ORAL CONTRACT

*(Plaintiff v. Harry Winston, and Does 1-100, inclusive)*

65.    Plaintiff hereby incorporates by reference and realleges each of the allegations set forth in the preceding paragraphs.

66.    ON and Harry Winston initially met over the phone in approximately September 2013, and on September 29, 2013, Epao sent an email to Ghalayani containing, among other things, information regarding a potential sponsorship with amfAR.

67.    Ghalayini sent an email to Epao on October 1, 2013 indicating that Harry Winston was interested in being the exclusive jewelry and watch sponsor for select amfAR events, and ON executed the NDA with AAB/amfAR the next day.

68.    During these conversations and in ensuing discussions, ON and Harry Winston orally agreed that ON would locate high-profile event sponsorship opportunities for Harry Winston in exchange for a consulting fee of ten percent of a consummated deal. This oral agreement is shown by the writings and conduct of the parties.

69.    ON's consulting services included introducing, creating, and fostering a business relationship between Harry Winston and AAB/amfAR. ON was also the main contact for handling Harry Winston's brand integration into any gala or event that Harry Winston decided to pursue. The parties orally agreed that ON would serve in this intermediary role before, during, and after each event, and that Harry Winston would not independently communicate with the host organization.

70.    The consulting fee was a ten percent commission contingent on a successful deal. If ON had been unable to consummate a sponsorship or partnership between Harry Winston and AAB/amfAR, then ON would have no claim to any fee.

71.    ON performed the responsibilities required of it under this agreement, and Harry Winston was not excused from performing their obligations. However,

subsequent to ON's performance per their agreement, Harry Winston has used the controversy surrounding the GGF Partnership as a pretense for circumventing ON relative to the amfAR Partnership.

72.    Without ON's services, Harry Winston would not have been aware of or able to procure a partnership with AAB/amfAR.

73.    Harry Winston breached its obligations under the oral contract with ON by engaging directly in negotiations with AAB and amfAR, and then agreeing to a 53 million dollar partnership, all without ON's prior written authorization or payment to ON.

74.    This partnership came after ON had sent a similar but smaller proposal of 1.25 million dollars to amfAR on behalf of Harry Winston. In short, Harry Winston did consummate a deal with AAB/amfAR, but did so behind ON's back and in direct contravention of the contract the parties had agreed to.

75.    Because of Harry Winston's breaches, ON has been injured as a consequence of the fact that ON's trade secrets and information have been used without ON's consent and without compensation.

76.    No amount of reasonable protections could have prevented Harry Winston's breaches of its oral agreement with ON, which was willful and deliberate, and in utter and conscious disregard of the contractual terms and ON's rights.

77.    ON's consulting fee, based on a ten percent commission of the amfAR Partnership, is 5.3 million dollars, or ten percent of 53 million dollars. Despite ON's demands, Harry Winston has refused to pay ON anything for its services.

78.    As a direct result of Harry Winston's breaches, ON has been damaged in an amount to be determined at trial, but believed to exceed 5.3 million dollars, together with interest thereon.

**VII.   THIRD CAUSE OF ACTION FOR BREACH OF IMPLIED-IN-FACT CONTRACT**

*(Plaintiff v. Harry Winston, and Does 1-100, inclusive)*

79.    Plaintiff hereby incorporates by reference and realleges each of the allegations set forth in the preceding paragraphs.

80.    In performing the acts and engaging in the conduct of agreeing ON would not be circumvented and would be paid for its role in the Harry Winston-amfAR partnership, as described above, ON and Harry Winston manifested an intention to enter into an agreement whereby ON would provide creative consulting services, and Harry Winston would pay a commission fee if and when a deal was completed.

81.    Such acts and conduct included, but were not limited to: Epao advising Harry Winston multiple times via email that ON's fee was ten percent of the final deal's budget; the parties' discussion of payment structuring and terms; and Harry Winston's payment of ON's ten percent fee in the GGF Partnership, which was a similar gala sponsorship deal.

82.    Harry Winston performed these acts and conduct with the intent to manifest its intention to form an agreement with ON, who understood said intent and acted with its own intent to enter into the agreement.

83.    At no time did Harry Winston conclusively manifest an intent to ON that it intended to break the agreement, until its betrayal of ON, as alleged above.

84.    The fact Harry Winston paid ON its ten percent consulting fee in connection with the GGF Partnership shows a course of conduct between the parties and Harry Winston's understanding that ON earned its consulting fee via commission on closed deals.

85.    This conduct created an implied-in-fact agreement because the parties, by their words, intentions, and actions, knew or should have known that the other party would interpret future conduct as an agreement whereby ON would provide

1  services to Harry Winston, in exchange for a commission based on business

2  opportunities that were presented, pursued, and consummated.

3      86.    ON performed the responsibilities required of it under this agreement,

4  and Harry Winston was not excused from performing their obligations. However,

5  subsequent to ON's performance per their agreement, Harry Winston has used the

6  controversy surrounding the GGF Partnership as a pretense for circumventing ON

7  relative to the amfAR Partnership.

8      87.    Harry Winston breached its obligations to ON by engaging directly in

9  negotiations with AAB and amfAR, and then agreeing to a 53 million dollar

10  partnership, all without ON's prior written authorization or payment to ON.

11      88.    Because of Harry Winston's breaches, ON has been injured as a

12  consequence of the fact that ON's trade secrets and information have been used

13  without ON's consent and without compensation.

14      89.    No amount of reasonable protections could have prevented Harry

15  Winston's breaches of its implied-in-fact contract with ON, which was willful and

16  deliberate, and in utter and conscious disregard of the terms and ON's rights.

17      90.    ON's consulting fee, based on a ten percent commission of the amfAR

18  Partnership, would be 5.3 million dollars, or ten percent of 53 million dollars.

19  Despite ON's demands, Harry Winston has refused to pay ON anything for its

20  services.

21      91.    As a direct result of Harry Winston's breaches, ON has been damaged

22  in an amount to be determined at trial, but believed to exceed 5.3 million dollars,

23  together with interest thereon.

24

25

26

27

28

*OBAGI LAW GROUP, P.C.*
ATTORNEYS AT LAW

## VIII. FOURTH CAUSE OF ACTION FOR INTENTIONAL INTERFERENCE WITH PROSPECTIVE ECONOMIC RELATIONS

### *(Plaintiff v. AAB, amfAR, and Does 1-100, inclusive)*

92.    Plaintiff hereby incorporates by reference and realleges each of the allegations set forth in the preceding paragraphs.

93.    As a result of the various agreements between the parties, including the NDA, an economic relationship existed between ON and the Defendants relating to the amfAR Partnership, which such prospective deal would probably have resulted in an economic benefit to ON.

94.    Since ON introduced Harry Winston and AAB/amfAR to each other and since ON played a similar "matchmaking" and intermediary role with respect to each party, the Defendants knew of the existence of ON's respective economic relationship with the other Defendant(s), and all Defendants were aware of the fact ON would be obligated to be compensated for its services if Harry Winston and amfAR agreed to a sponsorship or partnership. Through the NDA, emails, and conversations in person and over the phone, the Defendants each represented that they would not circumvent ON in any prospective deal of which ON provided them, and would not cut ON out from its commission fee from said deal.

95.    The Defendants nonetheless secretly communicated with each other and formed the amfAR Partnership behind ON's back. The Defendants designed their wrongful conduct knowing it would circumvent ON's role in the amfAR Partnership, and intending and knowing that their prospective deal was certain or substantially certain to inure to their exclusive benefit, and the harm of ON.

96.    ON was harmed because its role in the amfAR Partnership was disrupted; ON was cut out of its duly earned commission. The Defendants' wrongful conduct was a substantial factor in causing ON's harm.

97.    Furthermore, the Defendants engaged in the above-described actions in an oppressive, fraudulent, and malicious manner. Their conduct, therefore, warrants

*Optikal Noize, Inc. v. Harry Winston, Inc., et al.*        -17-

OBAGI LAW GROUP, P.C.
ATTORNEYS AT LAW

1    the imposition and award of punitive damages.

2

3    **IX.    FIFTH CAUSE OF ACTION FOR NEGLIGENT INTERFERENCE**

4    **WITH PROSPECTIVE ECONOMIC RELATIONS**

5    *(Plaintiff v. AAB, amfAR, and Does 1-100, inclusive)*

6    98.    Plaintiff hereby incorporates by reference and realleges each of the

7    allegations set forth in the preceding paragraphs.

8    99.    As alleged above in the Fourth Cause of Action, ON was

9    simultaneously in an economic relationship with Harry Winston and with

10   AAB/amfAR, which relationships would have resulted in a commission fee to ON if

11   it was able to bring the parties together to form a sponsorship/partnership.

12   100.   The Defendants, and each of them, knew or should have known of this

13   relationship, and knew or should have known that ON's relationship would be

14   disrupted if Defendants, and each of them, failed to act with reasonable care,

15   including by acting behind ON's back in communicating and agreeing to deals with

16   the other side.

17   101.   The Defendants nonetheless secretly communicated with each other

18   and formed the amfAR Partnership behind ON's back, a clear failure to act with

19   reasonable care.

20   102.   ON was harmed because its role in the amfAR Partnership was

21   disrupted, and ON was cut out of its duly earned commission.  The Defendants'

22   wrongful conduct was a substantial factor in causing ON's harm.

23

24

25

26

27

28

**X.    SIXTH CAUSE OF ACTION FOR MISAPPROPRIATION OF TRADE SECRETS (CAL. CIV. CODE § 3426 *ET SEQ.*)**

*(Plaintiff v. AAB, amfAR, and Does 1-100, inclusive)*

103.   Plaintiff hereby incorporates by reference and realleges each of the allegations set forth in the preceding paragraphs.

104.   The Defendants misappropriated ON's trade secrets by improper means within the meaning of the California Uniform Trade Secrets Act, California Civil Code section 3426 *et seq.* ("CUTSA").

105.   The information provided by ON to the Defendants included "trade secrets" within the meaning of CUTSA, because ON's deal leads and creative consulting services regarding branding integration for high-end events constituted information that was not generally known to the public.

106.   The Defendants, and each of them, obtained such trade secrets from ON by "improper means" within the meaning of CUTSA, including by misrepresentation and breaching agreed-upon duties to maintain secrecy.

107.   The Defendants, and each of them, engaged in "misappropriation" within the meaning of CUTSA, because the Defendants each knew or had reason to know that they were inducing ON to share its information and services with the Defendants, with the expectation of being compensated in exchange.

108.   The Defendants, and each of them, were unjustly enriched because their misappropriation of ON's trade secrets caused them to receive a benefit they, and each of them, would not otherwise have achieved.

109.   ON did not consent to this misappropriation.

110.   ON has been harmed by each of said Defendants' misappropriation of trade secrets, and each of said Defendants' conduct was a substantial factor in causing ON's harm. As a direct and proximate result of such misappropriation, ON has suffered actual, special, incidental, and consequential damages, and is entitled to restitution for said Defendants' unjust enrichment, in an amount according to proof.

OBAGI LAW GROUP, P.C.
ATTORNEYS AT LAW

111. Furthermore, each of said Defendants engaged in the above-described actions in a bad faith, oppressive, fraudulent and malicious manner. Their conduct, therefore, warrants the imposition of punitive damages.

## XI.   SEVENTH CAUSE OF ACTION FOR BREACH OF FIDUCIARY DUTY

*(Plaintiff v. AAB, amfAR, and Does 1-100, inclusive)*

112. Plaintiff hereby incorporates by reference and realleges each of the allegations set forth in the preceding paragraphs.

113. As alleged above, each of the Defendants voluntarily entered into agreements with ON, including the NDA, contemplating that ON would provide creative consulting services, including by introducing Harry Winston to AAB/amfAR for purposes of establishing the amfAR Partnership. As parties to these agreements, the Defendants engaged in a partnership with ON, because there was the understanding that, in exchange for ON's services, that ON would share a percentage of the value of any deal that closed between Harry Winston and AAB/amfAR. As partners, the Defendants at all times owed ON the fiduciary duties of disclosure, loyalty, and care.

114. Pursuant to such fiduciary duties, the Defendants were required to act in the utmost good faith towards ON, and to act in the best interests of ON. By virtue of this fiduciary relationship, ON reposed trust and confidence in the integrity of the Defendants. ON provided no cause for the Defendants to act in any manner inconsistent with this fiduciary relationship.

115. The Defendants intended to induce ON to rely on their fiduciary relationship, and in reasonable reliance thereon, ON was induced to, and did continue its fidelity to each of the Defendants, while working to foster a business relationship between the parties.

OBAGI LAW GROUP, P.C.
ATTORNEYS AT LAW

116.   The Defendants, and each of them, have breached their fiduciary duties, including the duties of disclosure, loyalty, and care to ON by engaging in the acts alleged above.

117.   As a direct and foreseeable result of these breaches of fiduciary duty by the Defendants, ON has sustained damages in an amount according to proof, but within the unlimited jurisdiction of this Court.

118.   The aforementioned conduct was intended by the Defendants to deprive ON of property and legal rights and otherwise cause injury, and was conduct that continues to subject ON to cruel and unjust hardship and oppression in conscious disregard of its rights.   All of the Defendants' conduct was ratified, approved, or otherwise undertaken by a managing agent so as to justify the imposition and award of punitive damages.

## XII.   EIGHTH CAUSE OF ACTION FOR RESTITUTION/ UNJUST ENRICHMENT

### (Plaintiff v. AAB, amfAR, and Does 1-100, inclusive)

119.   Plaintiff hereby incorporates by reference and realleges each of the allegations set forth in the preceding paragraphs.

120.   The Defendants, and each of them, received and appreciated substantial economic benefits from the opportunities and information disclosed to them by ON.

121.   Specifically, Harry Winston sought ON's services for purposes of finding a sponsorship/partnership opportunity, and AAB/amfAR sought ON's services for purposes of finding a potential sponsor/partner for its international galas.  ON introduced the parties to each other and facilitated negotiations between the parties, which led to the amfAR Partnership, which has provided and continues to provide mutual benefits to Defendants.

122.   However, the Defendants accepted and retained these benefits by forming the amfAR Partnership behind ON's back, after ON had done the "leg work" of bringing the parties together and starting negotiations.  As such, their

OBAGI LAW GROUP, P.C.
ATTORNEYS AT LAW

# XIV. PRAYER FOR RELIEF

WHEREFORE, Plaintiff Optikal Noize, Inc. prays for judgment against all Defendants, and each of them, according to proof as follows:

1.   For damages for breach of contract according to proof, including consequential damages proximately caused thereby, and restitution of costs and expenses;

2.   For special and compensatory damages in an amount according to proof;

3.   For exemplary damages acts constituting for fraud, malice or oppression under the fourth, sixth and seventh causes of action

4.   For an award of pre-judgment interest on sums certain;

5.   For attorneys' fees, costs, and expenses in accordance with the terms of the contract with AAB/amfAR referenced above, and/or as allowed by law under statute;

6.   For such other and further relief as the Court may deem necessary, equitable, and appropriate.

PLAINTIFF HEREBY DEMANDS A JURY TRIAL.

Dated: August 1, 2016                              OBAGI LAW GROUP, P.C.


                                                   By:
                                                      Zein E. Obagi, Jr.
                                                      Ben B. Jakovljevic
                                                      Attorneys for Plaintiff
                                                      OPTIKAL NOIZE, INC.

OBAGI LAW GROUP, P.C.
ATTORNEYS AT LAW

CM-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | FOR COURT USE ONLY |
|---|---|
| Zein E. Obagi Jr., (State Bar No. 264139)<br>Obagi Law Group, P.C.<br>433 North Camden Drive Suite 400<br>Beverly Hills CA 90210<br>TELEPHONE NO.: 424 284 2401     FAX NO.: 310.734.1814<br>ATTORNEY FOR *(Name):* Optikal Noize, Inc. | CONFORMED COPY<br>ORIGINAL FILED<br>Superior Court of California<br>County of Los Angeles<br><br>AUG 0 1 2016<br><br>Sherri R. Carter, Executive Officer/Clerk<br>By: Judi Lara, Deputy |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF Los Angeles
STREET ADDRESS: 111 N. Hill St.
MAILING ADDRESS:
CITY AND ZIP CODE: Los Angeles CA 90012
BRANCH NAME:

CASE NAME:
Optikal Noize, Inc. v. AAB Productions, Inc., et al.

| CIVIL CASE COVER SHEET | | Complex Case Designation | | CASE NUMBER: |
|---|---|---|---|---|
| ☑ Unlimited<br>(Amount<br>demanded<br>exceeds $25,000) | ☐ Limited<br>(Amount<br>demanded is<br>$25,000 or less) | ☐ Counter   ☐ Joinder<br>Filed with first appearance by defendant<br>(Cal. Rules of Court, rule 3.402) | | BC 6 2 9 0 9 5 |
| | | | JUDGE: | |
| | | | DEPT: | |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check one box below for the case type that best describes this case:

| Auto Tort | Contract | Provisionally Complex Civil Litigation |
|---|---|---|
| ☐ Auto (22) | ☑ Breach of contract/warranty (06) | (Cal. Rules of Court, rules 3.400–3.403) |
| ☐ Uninsured motorist (46) | ☐ Rule 3.740 collections (09) | ☐ Antitrust/Trade regulation (03) |
| **Other PI/PD/WD (Personal Injury/Property** | ☐ Other collections (09) | ☐ Construction defect (10) |
| **Damage/Wrongful Death) Tort** | ☐ Insurance coverage (18) | ☐ Mass tort (40) |
| ☐ Asbestos (04) | ☐ Other contract (37) | ☐ Securities litigation (28) |
| ☐ Product liability (24) | **Real Property** | ☐ Environmental/Toxic tort (30) |
| ☐ Medical malpractice (45) | ☐ Eminent domain/Inverse | ☐ Insurance coverage claims arising from the |
| ☐ Other PI/PD/WD (23) | condemnation (14) | above listed provisionally complex case |
| **Non-PI/PD/WD (Other) Tort** | ☐ Wrongful eviction (33) | types (41) |
| ☐ Business tort/unfair business practice (07) | ☐ Other real property (26) | **Enforcement of Judgment** |
| ☐ Civil rights (08) | **Unlawful Detainer** | ☐ Enforcement of judgment (20) |
| ☐ Defamation (13) | ☐ Commercial (31) | **Miscellaneous Civil Complaint** |
| ☐ Fraud (16) | ☐ Residential (32) | ☐ RICO (27) |
| ☐ Intellectual property (19) | ☐ Drugs (38) | ☐ Other complaint *(not specified above)* (42) |
| ☐ Professional negligence (25) | **Judicial Review** | **Miscellaneous Civil Petition** |
| ☐ Other non-PI/PD/WD tort (35) | ☐ Asset forfeiture (05) | ☐ Partnership and corporate governance (21) |
| **Employment** | ☐ Petition re: arbitration award (11) | ☐ Other petition *(not specified above)* (43) |
| ☐ Wrongful termination (36) | ☐ Writ of mandate (02) | |
| ☐ Other employment (15) | ☐ Other judicial review (39) | |

2. This case ☐ is   ☑ is not   complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. ☐ Large number of separately represented parties   d. ☐ Large number of witnesses
   b. ☐ Extensive motion practice raising difficult or novel   e. ☐ Coordination with related actions pending in one or more courts
       issues that will be time-consuming to resolve            in other counties, states, or countries, or in a federal court
   c. ☐ Substantial amount of documentary evidence   f. ☐ Substantial postjudgment judicial supervision

3. Remedies sought *(check all that apply):* a. ☑ monetary   b. ☐ nonmonetary; declaratory or injunctive relief   c. ☑ punitive
4. Number of causes of action *(specify):* 9
5. This case ☐ is   ☑ is not   a class action suit.
6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*

Date: 08/01/2016
Zein E. Obagi, Jr.
_____          _____
(TYPE OR PRINT NAME)                              (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>CM-010 [Rev. July 1, 2007] | **CIVIL CASE COVER SHEET** | Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;<br>Cal. Standards of Judicial Administration, std. 3.10<br>*www.courtinfo.ca.gov* |
|---|---|---|